## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**PATRICIA OLVERA, CASSANDRA L. DIAZ, JASON LEE SOLIS, HUMBERTO RAMIREZ VILLANUEVA, ANNA RODRIGUEZ, and MARISA GUERRA,** individually, and on behalf of others similarly situated,

Civil Action File No.

Hon.

Mag.

Plaintiffs,

vs.

**EXTREME MOTOR SPORTS LLC,** a Texas limited liability company, and **EXXXTREME CYCLES LLC**, a Texas limited liability company, and **ARTEMIO PEREZ**,

Defendants.

## COLLECTIVE AND CLASS ACTION
## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiffs, PATRICIA OLVERA, CASSANDRA L. DIAZ, JASON LEE SOLIS, HUMBERTO RAMIREZ VILLANUEVA, ANNA RODRIGUEZ, and MARISA GUERRA ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant EXTREME MOTOR SPORTS LLC, Defendant

1

EXXXTREME CYCLES LLC, and Defendant ARTEMIO PEREZ, collectively "Defendants", and state as follows:

## **INTRODUCTION**

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2.    According to its website, Defendant Exxxtreme Cycles is a franchise branch from the Massimo, Spartan, Intimidator, and Echo Manufacturing Company that is licensed in the state of Texas and in the business of selling and servicing ATVs, UTVS, go-karts, scooters, and zero-turn mowers."[1]

3.    Defendant Extreme Motor Sports LLC is listed on the employee pay statements and maintains the same 1006 Expressway 83 Penitas, Texas address as Defendant Exxxtreme Cycles.

4.    At all relevant times, Defendant Artemio Perez was the owner and operator of both limited liability company Defendants.

5.    Defendants operate two retail locations in Texas, one in Penitas, and the other in La Feria.

---

[1]https://www.exxxtremecycles.com/ (last visited 3/8/2023).

6.    Plaintiffs allege that Defendants maintain a common policy that misclassified them and all other similarly situated employees as exempt employees.

7.    Specifically, Plaintiffs complain that Defendants misclassified them as exempt and wrongly denied their legally-mandated overtime pay.

8.    Plaintiffs and the putative class were non-exempt because they were never paid $684 on a salary basis.

9.    Plaintiffs' primary duty was not management, and they lacked the authority to hire or fire other employees or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight.

10.    Because of Defendants' illegal common policy, Plaintiffs seek to represent current and former "Managers" who were paid a salary of less than $684 per week and whom Defendants improperly classified as exempt from the overtime protections and remedies of the FLSA, *e.g.* 29 U.S.C. §§ 207, 216(b).

11.    Plaintiffs seeks a declaration that their rights, and the rights of the similarly situated Managers were violated, an award of unpaid wages, an award of liquidated damages for any unpaid wages that were overtime wages, injunctive and declaratory relief, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that future workers will not be subjected by

Defendants to such illegal conduct.

## **JURISDICTION**

12.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

13.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

14.    Defendants' annual sales exceed $500,000.

15.    Defendants have more than two employees, handling tools, materials and goods that have previously moved in interstate commerce, including ATVs, UTVS, go-karts, scooters, and zero-turn mowers.

16.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

17.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

18.    This Court has personal jurisdiction over Defendants because they conduct business within the state of Texas, have their principal place of business and headquarters in Texas, are registered with the Texas Secretary of State and employ individuals within the state of Texas.

19.    This Court also has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting activities in the state of Texas, have established minimum contacts sufficient to confer jurisdiction over them and have their principal place of business in this district and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants conduct substantial business activities within this District and maintain their principal place of business in this District.

21.    Venue is also proper in this District because Plaintiffs' claims accrued in this District.

## PARTIES

22.    Plaintiff PATRICIA OLVERA ("Plaintiff Olvera") is a Texas resident

who worked for Defendants within the last three years.

23.    Defendants paid Plaintiff Olvera for her services in the form of an hourly wage, most recently at the rate of $13.00 per hour.

24.    Plaintiff Olvera signed a consent to join this collective action lawsuit. **Exhibit 1**, Olvera Consent to Join.

25.    Plaintiff CASSANDRA L. DIAZ ("Plaintiff Diaz") is a Texas resident who worked for Defendants in Texas within the last three years.

26.    Defendants paid Plaintiff Diaz for her services in the form of an hourly wage, most recently at the rate of approximately $15.00 per hour.

27.    Plaintiff Diaz signed a consent to join this collective action lawsuit. **Exhibit 2**, Diaz Consent to Join.

28.    Plaintiff HUMBERTO RAMIREZ VILLANUEVA ("Plaintiff Ramirez Villanueva") is a Texas resident who worked for Defendants within the last three years.

29.    Defendants paid Plaintiff Ramirez Villanueva for his services in the form of an hourly wage, most recently at the rate of approximately $13.00 per hour.

30.    Plaintiff Ramirez Villanueva signed a consent to join this collective action lawsuit. **Exhibit 3**, Ramirez Villanueva Consent to Join.

31.    Plaintiff JASON LEE SOLIS ("Plaintiff Solis") is a Texas resident who

worked for Defendants within the last three years.

32. Defendants paid Plaintiff Solis for his services in the form of an hourly wage, most recently at the rate of approximately $10 per hour.

33. Plaintiff Solis signed a consent to join this collective action lawsuit. **Exhibit 4**, Solis Consent to Join.

34. Plaintiff MARISA GUERRA ("Plaintiff Guerra") is a Texas resident who worked for Defendants within the last three years.

35. Defendants paid Plaintiff Guerra for her services in the form of an hourly wage, most recently at the rate of approximately $11.50 per hour.

36. Plaintiff Guerra signed a consent to join this collective action lawsuit. **Exhibit 5**, Guerra Consent to Join.

37. Plaintiff ANA RODRIGUEZ ("Plaintiff Rodriguez") is a Texas resident who worked for Defendants within the last three years.

38. Defendants paid Plaintiff Rodriguez for her services in the form of an hourly wage, most recently at the rate of approximately $16.00 per hour.

39. Plaintiff Rodriguez signed a consent to join this collective action lawsuit. **Exhibit 6**, Rodriguez Consent to Join.

40. Defendant Exxxtreme Cycles LLC is a Texas limited liability company (voluntarily terminated) (Tax I.D. 32068889594) with its registered office address

located at 1006 Expressway 83 Penitas, Texas, 78576.

41.    Defendant Extreme Motor Sports LLC is a Texas limited liability company (Tax I.D. 32086186528) with its registered office address located at 1006 Expressway 83 Penitas, Texas, 78576.

42.    Defendant Artemio Perez is an individual who owns, operates, and controls many of the day-to-day operations of the co-defendants, including exercising control over compensation methods, hours worked, hiring, promotion and demotions, firing, and job duties of the Plaintiffs and putative class/collective. Mr. Perez is domiciled and conducts regular and systematic business activities in the state of Texas and within this District.

## JOINT EMPLOYER ALLEGATIONS

43.    Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

44.    The definition of "employer" under the FLSA is not limited to the common law concept of "employer," and is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes. *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979).

45.    Congress defined "employee" as "any individual employed by an

employer," 29 U.S.C. § 203(e)(1), describing this language as "the broadest definition that has ever been included in any one act." *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (*quoting* 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300 n.21 (1985) (same).

46.    The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is "economic reality." *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).

47.    Two or more employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

48.    Regulations issued by the Department of Labor give the following examples of joint employment situations:

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

49.    The ultimate question of whether a party is an "employer" is a legal issue. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The ultimate determination must be based "upon the circumstances of the whole activity." *Id*. at 1470 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947).

50.    At all relevant times, Defendants controlled the rate and method of payment for the employees (including front and back of the house employees); controlled and dictated their schedule and job duties; and otherwise, exercised control, input, and responsibility for the work hours, compensation and pay policies at issue in this case. Thus, all Defendants meet the test for joint employer.

51.    Whether employers, or joint employers, each Defendant is nevertheless liable for the wage violations pleaded in this Complaint. *Falk*, supra; 29 C.F.R. § 791.2(a).

52.    At all times herein mentioned, Defendants' acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## COMMON ENTERPRISE ALLEGATIONS

53.    The FLSA provides, in relevant part, that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities

whether performed in one or more establishments ...." 29 U.S.C. § 203(r).

54.     The three elements to be satisfied are: (1) related activities, (2) unified operation or common control, and (3) common business purpose. See *Brennan v. Arnheim & Neely*, 410 U.S. 512, 518, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973).

55.     The Defendants meet all three elements.

56.     Related activities are those which are "the same or similar," S.Rep. No. 145, [8]7th Cong.· 1st Sess. 41, reprinted in 1960 U.S.Code Cong. & Ad. News 1620, or are "auxiliary or service activities." 29 C.F.R. § 779.206(a) (quoting id.). Auxiliary and service activities include generally "all activities which are necessary to the operation and maintenance of the particular business," such as warehousing, bookkeeping, or advertising. *Id*.; *see also id*. at § 779.208. When different business entities are involved, the critical inquiry is whether there is " 'operational interdependence in fact.' " *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 ([1]1th Cir.1984) (*quoting Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 ([5]th Cir.1973)). Entities which provide mutually supportive services to the substa[n]tial advantage of each entity are operationally interdependent and may be treated as a single enterprise under the Act. *Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 692–93 ([4]th Cir.1990).

57.     In the present case, Defendants are operationally interdependent

because they share ownership, management, employees, and employment policies.

58.    The Secretary's regulations define "unified operation" as "combining, uniting, or organizing [related activit'es'] performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217. "Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Id*. § 770.221.

59.    As explained herein, the Defendants maintain a unified operation with common ownership and control of each store. Further, the Defendants maintain the power to direct, restrict, regulate, govern or administer the performance of all hourly employees' work activities at its stores. Additionally, Defendants maintain the power to hire, discipline, and fire the employees (including managers and all hourly employees) of its stores. Finally, as it pertains to this case, Defendants dictate the compensation policies and procedures of the hourly employees at their stores.

60.    "'Common control' may exist … despite the separate management of the individual establishments." *Dole v. Bishop*, 740 F.Supp. 1221, 1225

(S.D.Miss.1990) (citing *Shultz v. Morris*, 315 F.Supp. 558, 564 (M.D.Ala.1970), *aff'd sub nom*., *Hodgson v. Morris*, 437 F.2d 896 (5th Cir.1971)).

61.    Finally, obviously enough, the Defendants all share in the common business purpose of advancing and growing their stores.

## GENERAL ALLEGATIONS

62.    Defendants employed Plaintiffs, and those similarly situated, as "managers" within the last three (3) years.

63.    At all relevant times, Defendants directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with their daily work activities (including sales, financing, recordkeeping, customer support and service).

64.    Defendants employ a uniform pay policy whereby each "manager" is verbally classified as exempt and is not paid for any hours worked in excess of 40 hours in a given workweek. Defendants subjected each "manager" to the pay policy.

65.    In each of the Plaintiffs' cases they were not allowed to clock in or clock out at the start or end of their shifts but were regularly required to work from 9AM-6PM (and sometimes later) Monday through Friday and 9AM-4PM on Saturdays.

66.    The schedule was mandatory and required Plaintiffs to stay after 6 if

customers were still present. This resulted in Plaintiffs regularly working 46 hours or more per week.

67.    For example, Defendants compensated Plaintiff Olvera by compensating her $13.00 per hour for 40 hours per week and nothing for every hour worked in excess of 40 hours in a given workweek. Based upon her regular schedule, Defendants failed to pay Plaintiff Olvera approximately $117 (6 hours x $19.5 per hour) in overtime pay each week.

68.    For example, for the pay period that ended 2/24/2023, Plaintiff Olvera worked her typical 46 hours. Despite working these hours, her paystub shows that she was paid for only 40 hours during this one week pay period. Thus, as calculated above, Defendants failed to pay her the overtime wages of $117 that she earned that pay period.

69.    Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional and outside sales employees. To qualify for exemption, employees generally must meet certain tests regarding their job duties and be paid on a salary basis at not less than $684 per week. Job titles do not determine exempt status. In order for an exemption to apply, an employee's specific job duties and salary must meet _all_ the requirements of the Department's regulations.

See Fact Sheet #17G: Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA)[2].

70.    At all relevant times, Defendants maintained a common policy of misclassifying Plaintiffs, and other similarly situated employees, as exempt from the overtime requirements of the FLSA.

71.    However, at no point in time were Plaintiffs, or any similarly situated employees, paid the required $684 per week.

72.    The provisions of the FLSA, 29 U.S.C. § 207, require Defendants to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one half times their regular rate of pay.

73.    Contrary to the above statutory enactment, Defendants failed to pay Plaintiffs, and other similarly situated employees, overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek.

74.    Furthermore, in violation of its contractual written and oral promises to pay Plaintiffs and the putative class for all hours worked under forty hours, Defendants systematically and routinely breached their contractual obligations. Evidence of Defendants' contractual obligation to pay for all hours worked under

---

[2] https://www.dol.gov/agencies/whd/fact-sheets/17g-overtime-salary (last visited 3/15/2023).

forty hours in a workweek is found in each paystub, and other documents in Defendants' possession or control.

75.    Alternatively, in the absence of a valid and binding contract, Defendants were unjustly enriched by failing to pay Plaintiffs and the putative class for all hours worked under 40 hours during a workweek.

76.    For example, if "managers" missed a partial day of work to attend a doctor's appointment or some other personal matter, rather than pay them for the hours worked in that day, the Defendants deducted an entire day of wages.

77.    Further, Defendants willfully violated the FLSA by knowingly and willfully failing to compensate Plaintiffs for the hours they worked in excess of 40 hours per week according to the terms of the FLSA, 29 U.S.C. § 201, *et seq*.

78.    In light of the explicit DOL guidance and regulations cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

79.    At all times relevant to this action, Defendants were an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

80.    Defendants are engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

81.     At all times relevant to this action, Plaintiffs and the similarly situated employees were "employee[s]" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

82.     Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) have been employed in an enterprise engaged in commerce or in the production of goods for commerce.

83.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the similarly situated employees to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

84.     The violations of the FLSA, 29 U.S.C. §§ 206 and 207, committed by Defendants and alleged in this Complaint present common questions of law and fact.

85.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and similarly situated employees.

86.     At all relevant times, Defendants were able to track the amount of time Plaintiffs and other similarly situated employees spent in connection with the work activities at issue in this case.

## FLSA COLLECTIVE ACTION ALLEGATIONS

87.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly managers who worked for Defendants at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

88.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated managers.

89.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

90.     Defendants assigned and/or were aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

91.     Defendants implemented and enforced an unlawful pay policy, as explained above.

92.     As part of its regular business practices, Defendants intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the

FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.      Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

      b.      Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendants; and

      c.      Willfully failing to include all remuneration paid in the calculation of the FLSA Collective's overtime premium rates.

93.      Defendants are aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

94.      Defendants' unlawful conduct has been widespread, repeated, and consistent.

95.      A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

96.      The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan

(including Defendants' pay policy); and (d) their claims are based upon the same factual and legal theories.

97.    The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

98.    The key issues – the amount of uncompensated overtime pay owed to each employee – do not vary substantially among the proposed FLSA Collective members.

99.    Many similarly situated current and former managers have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

100.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

101.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

102.    Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include dozens of workers.

103.   The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

104.   Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly managers who worked for Defendants, at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Class").  Plaintiffs reserve the right to amend this definition as necessary.

105.   The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical.  Plaintiff reasonably estimates there are dozens of Rule 23 Class members.  Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

106.   There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

> a.   Whether Defendants breached their contractual obligations to Plaintiffs and the Rule 23 Class Members

by failing to pay them for all (non-overtime) hours worked at their regular hourly rate;

b.    Whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Rule 23 Class Members by failing to pay them for all (non-overtime) hours worked at their regular hourly rate;

107.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendants' unlawful pay policy.

108.    Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

109.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions.

110.    Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

111.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically

infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual.

112.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed.

113.    This case will be manageable as a Rule 23 Class action.

114.    Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendants have advanced payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

115.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

116.    Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## <u>COUNT I</u>
## <u>(29 U.S.C. § 216(b) Collective Action)</u>
## <u>VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.</u>
## <u>FAILURE TO PAY OVERTIME WAGES</u>

117.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

118.     At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

119.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

120.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

121.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

122.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

123.    At all times relevant to this action, Defendants required Plaintiffs and the FLSA Collective to perform no less than 46 hours per week, but failed to pay these employees the federally mandated overtime compensation for every hour worked.

124.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

125.    Defendants' violations of the FLSA were knowing and willful.

126.    Defendants knew or could have determined how many hours Plaintiffs and the FLSA Collective worked per week.

127.    Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

128.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**
**Breach of Contract**

129.    Plaintiffs reallege and incorporate all previous paragraphs herein.

130.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

131.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendants' behalf.

132.    Defendants' contractual promises to pay Plaintiffs and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Class members.

133.    Upon information and belief, each Rule 23 Class member, including Plaintiffs, has an hourly rate between $10 and $16 per hour.

134.    Plaintiffs and every other Rule 23 Class member accepted the terms of Defendants' contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift.

135.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Class.

136.    For example, on occasion, Plaintiffs missed time from work causing them to work under 40 hours in a given week.

137.    When Plaintiffs missed only half of the day of work, Defendants nonetheless paid them nothing for that day, even if they had performed several hours of work.

138.    To the extent there is no other state law remedy available, Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

139.    As a direct and proximate result of Defendants' contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**Unjust Enrichment**

140.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

141.    This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

142.    This Count applies only to workweeks where the FLSA's overtime protections are inapplicable (less than 40 hours).

143.    At all times relevant to this action, Defendants promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed for the benefit of Defendants.

144.    Plaintiffs and every other Rule 23 Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

145.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each week, Defendants were unjustly enriched.

146.    Plaintiffs and the Rule 23 Class members performed work tasks at the request of and without objection by Defendants.

147.    Defendants received and accepted the above-referenced work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

28

148.   Upon information and belief, Defendants used the monies owed to Plaintiffs and every other Rule 23 Class member to finance their various business ventures or pay their equity owner(s).

149.   Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Class performed for Defendants' benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

150.   Plaintiff and the Rule 23 Class suffered detriment due to Defendants' failure to compensate them for the work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

151.   As a direct and proximate result of Defendants' actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective and on behalf of the Rule 23 Class request judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action (for the Rule 23 Class) pursuant

to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c.  Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective and Class members of their rights by law to join and participate in this lawsuit;

d.  Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Class, and undersigned counsel as Collective/Class counsel for the same;

e.  Declaring Defendants were joint employers and/or engaged in a common enterprise;

f.  Declaring Defendants violated the FLSA and the DOL's attendant regulations as cited herein;

g.  Declaring Defendants' violation of the FLSA was willful;

h.  Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the collective action Class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

i.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.  Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

k.  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: March 16, 2023           Respectfully Submitted,

**MORGAN & MORGAN, P.A.**

*s/ Andrew R. Frisch*
Andrew R. Frisch (FBN 027777)
8151 Peters Road
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PHV Forthcoming*)
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*PHV Forthcoming*)
126 South Main Street
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*